# Exhibit A-5

CAUSE NO.  202565103

RECEIPT NO.  1042590           85.00      CTM
          *********          TR # 74539609

PLAINTIFF: BRYANT, MORGAN                          In The   333rd
        vs.                                         Judicial District Court
DEFENDANT: CENTENE CORPORATION                      of Harris County, Texas
                                                    333RD DISTRICT COURT
                                                    Houston, TX

                        CITATION (CERTIFIED)
THE STATE OF TEXAS
County of Harris


TO: CENTENE CORPORATION

    7711  CARONDELET AVE STE 800   SAINT LOUIS  MO  63105

    Attached is a copy of PLAINTIFF'S ORIGINAL PETITION


This instrument was filed on the 3rd day of September, 2025, in the above cited cause number
and court. The instrument attached describes the claim against you.

     YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.
TO OFFICER SERVING:
     This citation was issued on 9th day of September, 2025, under my hand and
seal of said Court.



                                        MARILYN BURGESS, District Clerk
Issued at request of:                   Harris County, Texas
PITTMAN III, JOHN                       201 Caroline, Houston, Texas 77002
925  B STREET, SUITE 604                (P.O. Box 4651, Houston, Texas 77210)
SAN DIEGO, CA  92101
Tel: (760) 575-4040
Bar No.:  24127922                      Generated By: DENMON, BRIANNA JANEL
                                        3B5//12944027

CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy  of  this  citation  together  with  an  attached  copy  of
 PLAINTIFF'S ORIGINAL PETITION
to the following addressee at address:

_____      _____
                                       ADDRESS

_____      Service was executed in accordance with Rule 106
(a)ADDRESSEE                               (2) TRCP, upon the Defendant as evidenced by the
                                           return receipt incorporated herein and attached
                                           hereto at
_____
                                       _____
                                       on _____ day of _____, _____
                                       by U.S. Postal delivery to _____

                                       _____

                                       This citation was not executed for the following
                                       reason: _____

                                       _____

                                       MARILYN BURGESS, District Clerk
                                       Harris County, TEXAS

                                       By _____, Deputy


N.INT.CITM.P                          *74539609*

9/3/2025 3:26 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 105162115
By: Brianna Janel Denmon
Filed: 9/3/2025 2:48 PM

## 2025-65103 / Court: 333
CAUSE NO.

| | | |
|---|---|---|
| MORGAN BRYANT, | § | IN THE DISTRICT COURT |
| | § | |
| PLAINTIFF | § | FOR HARRIS COUNTY, TEXAS |
| | § | |
| v. | § | |
| | § | |
| | § | _____ JUDICIAL DISTRICT |
| | § | |
| CENTENE CORPORATION, | § | |
| | § | |
| AND DOES 1-25 INCLUSIVE, | § | |
| | § | |
| DEFENDANTS | § | |
| | § | |

## PLAINTIFF'S ORIGINAL PETITION

### I.     INTRODUCTION

This is an employment discrimination and retaliation action arising from the unlawful treatment of Morgan Bryant by her former employer, Centene Corporation. Ms. Bryant, a highly qualified employee who consistently met and exceeded expectations, was subjected to discriminatory scrutiny, targeted discipline, and ultimately a pretextual termination on the basis of her race and sex, and in retaliation for engaging in protected activity.

Despite performing her job duties satisfactorily and even being awarded a pay raise and positive feedback during a Performance Improvement Plan (PIP), Ms. Bryant was abruptly and discriminatorily terminated. The timing and contradictions between the employer's stated reasons and its actions expose the termination as retaliatory and pretextual.

Defendant's unlawful conduct included:

- Singling out Ms. Bryant for a retaliatory PIP not applied to similarly situated employees;
- Telling her that her performance was satisfactory and awarding her a raise while she remained on that PIP; and

- Terminating her employment anyway, under circumstances that reveal intentional discrimination and retaliation.

This lawsuit seeks to hold Defendant accountable under the Texas Commission on Human Rights Act (Texas Labor Code Chapter 21) and corresponding federal law, including Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Plaintiff seeks all remedies available under law, including back pay, front pay, compensatory damages, punitive damages, injunctive relief, attorney's fees, and costs of suit.

## II. DISCOVERY CONTROL PLAN & RULE 47 STATEMENT

2. Discovery Control. Pursuant to Texas Rule of Civil Procedure 190.3, Plaintiff requests that this case be governed by a Level 2 discovery control plan, as this action involves multiple claims under state and federal employment law and will require depositions, document production, expert testimony, and written discovery beyond Level 1 limits.

3. Rule 47 Statement of Relief Sought. Pursuant to Texas Rule of Civil Procedure 47(c), Plaintiff affirmatively pleads that she seeks:

a. Monetary relief over $250,000 but not more than $1,000,000, exclusive of interest, costs, and attorney's fees; and

b. Non-monetary relief as allowed by law, including injunctive and declaratory relief.

Plaintiff further states that the damages sought are within the jurisdictional limits of this Court.

## III. PARTIES

4. **Plaintiff.** Plaintiff **Morgan Bryant** ("Plaintiff") is an individual and resident of Harris County, Texas. At all relevant times, Plaintiff was employed by Defendant Centene Corporation and performed her job duties in Harris County, Texas.

5. **Defendant Centene Corporation.** Defendant **Centene Corporation** ("Defendant") is a foreign for-profit corporation that does business in Texas and employed Plaintiff in

2

Harris County. Defendant may be served with process through its registered agent for service of process:

**CT Corporation System**

1999 Bryan Street, Suite 900

Dallas, Texas 75201-3136

6. **Respondeat Superior.** At all times relevant, Plaintiff's supervisors and managers, including those who issued the retaliatory PIP and carried out her discriminatory termination, were acting within the course and scope of their employment with Defendant. Their conduct is therefore attributable to Defendant under the doctrine of respondeat superior.

## IV. JURISDICTION & VENUE

7. Subject-Matter Jurisdiction. This Court has jurisdiction over this action under the Texas Constitution, Article V, § 8 and Texas Government Code § 24.007, because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

8. Statutory Jurisdiction. This Court also has jurisdiction under the Texas Commission on Human Rights Act (Texas Labor Code Chapter 21), which prohibits discrimination and retaliation in employment. Plaintiff's claims also arise under federal law, including Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, over which this Court has concurrent jurisdiction.

9. Personal Jurisdiction. This Court has personal jurisdiction over Defendant because it does business in Texas, employed Plaintiff in Texas, and committed unlawful employment practices in Texas.

10. Venue. Venue is proper in Harris County, Texas under Texas Civil Practice & Remedies Code § 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Harris County, where Plaintiff was employed, where the

3

retaliatory PIP and termination decisions were carried out, and where Plaintiff suffered the resulting harm.

## V. FACTUAL BACKGROUND

### A. Plaintiff's Hiring, Role, and Early Contributions

11. Plaintiff Morgan Bryant is an African American woman who began working for Defendant Centene Corporation on January 7, 2023, as a Category Manager in Procurement. She worked remotely from Harris County, Texas, and her duties included drafting, reviewing, and processing contracts related to population health programs, such as diabetes prevention, stroke reduction, and wellness initiatives.

12. From the outset of her employment, Ms. Bryant approached her role with diligence and professionalism. Despite Centene's significant turnover in management during her tenure, she sought to create stability and improve workflows. Ms. Bryant introduced scorecards, standardized checklists, and process improvements to improve contract accuracy and transparency. Management ultimately adopted several of her proposed initiatives as standard practice within the department, demonstrating her value and competence.

13. Ms. Bryant's supervisors included Gregory ("Greg") Klausner and Jamie Parker, while Human Resources and Employee Relations were handled by Eric Judd and Tamara Jordan. These individuals played direct roles in the discriminatory and retaliatory acts that culminated in Ms. Bryant's termination.

### B. Disparate Standards and Manipulated Metrics

14. Beginning in 2023, Ms. Bryant noticed that her work was subjected to heightened scrutiny compared to White and male colleagues. For example, her contracts were rejected for minor clerical or formatting issues, while contracts with similar deficiencies submitted by White colleagues were routinely approved.

4

15. One striking example was that Mr. Klausner, a White male colleague, was credited with a 99% accuracy rate on 361 contracts, while Ms. Bryant's work was labeled as deficient, even though she followed the same procedures. The discrepancy was not explained by skill or effort, but by selective enforcement of standards.

16. Ms. Bryant's managers compounded this disparate treatment by presenting her with conflicting accuracy scores. Mr. Klausner reported that she was meeting expectations at approximately 39% accuracy, while Ms. Parker alleged that her performance was as low as 20% accuracy. Despite these inconsistent and contradictory figures, Defendant refused to provide Ms. Bryant with the underlying data, preventing her from defending her performance or correcting any alleged deficiencies.

17. The deliberate withholding and manipulation of performance data created a moving target designed to disadvantage Ms. Bryant. Meanwhile, White colleagues were not subjected to such opaque or arbitrary standards.

**C. Protected Activity and Retaliatory Discipline**

18. Ms. Bryant repeatedly voiced concerns to management and HR about the inconsistent metrics, disparate enforcement, and lack of transparency. Instead of responding with good faith or corrective action, Defendant accused her of having a "tone" and of making "serious accusations," deflecting from the substance of her complaints.

19. Shortly after her protected complaints, on or about January 15, 2025, Defendant placed Ms. Bryant on a Performance Improvement Plan (PIP). The PIP was based on the manipulated and contradictory metrics described above. The timing of the PIP, immediately following her complaints, evidences retaliation.

20. Ms. Bryant appealed the PIP, but her appeal was summarily rejected by HR representative Eric Judd, who offered no substantive explanation. When Ms. Bryant

5

escalated to Tamara Jordan, she was told only to open another ticket, which further delayed and obstructed any resolution.

21. To make matters worse, Defendant repurposed Ms. Bryant's own process-improvement ideas—the scorecards and checklists she had proposed months earlier—by implementing them company-wide and then using them as new "requirements" against her during the PIP.

**D. Hostile Micromanagement and Contradictory Treatment**

22. While on the PIP, Ms. Bryant endured micromanagement and nitpicking far beyond normal workplace standards. She was required to submit daily status updates, even while on approved leave, and was criticized for not duplicating updates across multiple trackers—requirements not imposed on her peers.

23. Management also began characterizing Ms. Bryant's innocuous communications as unprofessional. For example, when she replied "LOL, okay" to a workplace chat, this was cited as misconduct. No White or male employee was subjected to discipline for similar interactions.

24. These actions compounded the hostility of the workplace, creating an atmosphere designed to pressure Ms. Bryant into failure or resignation.

25. At the very same time, Defendant contradicted its own narrative of poor performance. In early 2025, Ms. Bryant received a pay raise from $75,000 to $77,000. Her supervisors also told her she was performing "good work" and that her contributions were valued. These statements directly undermine Defendant's later claim that her termination was performance-based.

**E. Termination and Pretext**

26. On or about March 18, 2025, Defendant terminated Ms. Bryant's employment, claiming she had failed to meet expectations. This termination was pretextual for several reasons:

6

a. She had been told her performance was "good" and had received a pay raise while still on the PIP;

b. Her process improvements had been adopted and implemented across the department;

c. Defendant relied on manipulated metrics and selective enforcement that were never applied consistently across employees; and

d. The termination occurred within weeks of her protected complaints, evidencing retaliation.

27. No reasonable employer acting in good faith would simultaneously claim that an employee was failing, award her a raise, adopt her solutions, and then terminate her. The contradictions in Defendant's actions expose its stated reasons as false and discriminatory pretext.

**F. Harm to Plaintiff**

28. As a direct result of Defendant's unlawful conduct, Ms. Bryant suffered loss of income, loss of benefits, diminished future earning capacity, emotional distress, humiliation, and reputational harm.

29. Ms. Bryant was a capable and valuable employee who sought only to perform her job and contribute to Centene's mission. Instead, she was punished for raising concerns, subjected to retaliation, and ultimately terminated because of her race, sex, and protected activity.

## VI. CONDITIONS PRECEDENT

30. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission Civil Rights Division (TWC-CRD), alleging discrimination and retaliation on the bases of race and sex, and identifying the unlawful conduct described herein.

7

31. The EEOC and TWC-CRD accepted jurisdiction over Plaintiff's charge. Plaintiff has since received a Notice of Right to Sue from the EEOC and/or TWC-CRD.

32. All jurisdictional prerequisites and conditions precedent to bringing this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Texas Commission on Human Rights Act (Texas Labor Code Chapter 21) have been satisfied, excused, or otherwise fulfilled.

## VII. CAUSE OF ACTION: TITLE VII & TEXAS LABOR CODE CHAPTER 21 — RACE AND SEX DISCRIMINATION

(Against Defendant Centene Corporation)

33. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

34. Plaintiff is an African American woman and thus a member of protected classes based on race and sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Texas Commission on Human Rights Act (TCHRA), Texas Labor Code Chapter 21.

35. Defendant Centene Corporation is an employer within the meaning of Title VII and the TCHRA and at all relevant times employed Plaintiff.

36. Plaintiff was qualified for her position as Category Manager in Procurement and performed her job duties satisfactorily, as evidenced by her continued positive contributions, adoption of her process-improvement initiatives, and the fact that she was given a pay raise even while on a Performance Improvement Plan (PIP).

37. Defendant subjected Plaintiff to discrimination in the terms, conditions, and privileges of employment because of her race and sex, including but not limited to:
a. Holding Plaintiff to stricter and inconsistent standards than White and/or male colleagues, including rejecting her contracts for minor errors while approving similar

8

submissions from others;

b. Excluding Plaintiff from fair and transparent performance metrics, instead manipulating accuracy rates and denying her access to underlying data;

c. Issuing a retaliatory and discriminatory PIP based on false and shifting metrics not applied to similarly situated colleagues;

d. Providing contradictory feedback, including telling Plaintiff her performance was satisfactory and giving her a raise, while simultaneously maintaining she was failing; and

e. Terminating Plaintiff's employment on or about March 18, 2025, under circumstances that reveal pretext and unlawful bias.

38. Similarly situated White and/or male employees were not subjected to the same scrutiny, disparate discipline, or termination.

39. Defendant's actions constitute race and sex discrimination under Title VII and the TCHRA.

40. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages, loss of benefits, loss of future earning capacity, emotional distress, humiliation, and damage to her professional reputation.

41. Plaintiff seeks to recover all relief available under Title VII and the TCHRA, including back pay, front pay, compensatory damages, punitive damages, attorney's fees, costs of suit, and injunctive relief.

## VIII. CAUSE OF ACTION: TITLE VII & TEXAS LABOR CODE CHAPTER 21 — RETALIATION

(Against Defendant Centene Corporation)

39. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

9

40. Under Title VII, 42 U.S.C. § 2000e-3(a), and the Texas Commission on Human Rights Act, Texas Labor Code § 21.055, it is unlawful for an employer to retaliate against an employee because she has opposed unlawful employment practices or participated in proceedings related to discrimination.

41. Plaintiff engaged in protected activity by:

a. Complaining internally about disparate treatment, manipulated accuracy metrics, and selective enforcement of contract standards;

b. Raising concerns with Human Resources and Employee Relations regarding discriminatory and retaliatory conduct by her supervisors; and

c. Filing a charge of discrimination with the EEOC and TWC-CRD.

42. Following Plaintiff's protected complaints, Defendant engaged in a pattern of escalating retaliation, including but not limited to:

a. Issuing a Performance Improvement Plan (PIP) based on manipulated and inconsistent metrics shortly after she raised discrimination concerns;

b. Micromanaging and nitpicking her work to create a paper trail for termination, including requiring unnecessary daily updates even while she was on approved leave;

c. Labeling benign responses (e.g., "LOL, okay") as "unprofessional," while excusing similar conduct by White comparators;

d. Simultaneously providing her contradictory feedback and a pay raise while claiming she was failing to meet expectations; and

e. Ultimately terminating her employment on March 18, 2025, under pretextual grounds.

43. The temporal proximity between Plaintiff's protected activity and Defendant's retaliatory actions, coupled with the contradictions between the alleged performance issues and the contemporaneous pay raise and praise, provide strong evidence of pretext.

10

44. Defendant's retaliatory actions materially affected the terms, conditions, and privileges of Plaintiff's employment, up to and including her wrongful termination.

45. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered and continues to suffer lost wages, lost benefits, diminished earning capacity, emotional distress, humiliation, and reputational harm.

46. Plaintiff seeks to recover all relief available under Title VII and the TCHRA, including back pay, front pay, compensatory damages, punitive damages, injunctive relief, attorney's fees, and costs of suit.

## IX. CAUSE OF ACTION: TITLE VII & TEXAS LABOR CODE CHAPTER 21 — HOSTILE WORK ENVIRONMENT

(Against Defendant Centene Corporation)

47. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

48. Title VII and the TCHRA prohibit employers from subjecting employees to a hostile or abusive work environment on the basis of race, sex, or in retaliation for engaging in protected activity.

49. Defendant Centene Corporation created and maintained a severe and pervasive hostile work environment that materially altered the terms and conditions of Plaintiff's employment. This environment included:

a. Manipulating and withholding performance metrics, then using those opaque figures as weapons against Plaintiff;

b. Subjecting Plaintiff to a retaliatory PIP not imposed on similarly situated White and/or male comparators;

c. Micromanaging and nitpicking Plaintiff's work, including requiring duplicative updates and demanding status reports even while she was on approved leave;

11

d. Labeling normal, benign workplace communications as "unprofessional" when Plaintiff used them, while ignoring similar language by White colleagues;

e. Creating constant fear and instability by telling Plaintiff her performance was "good" and awarding her a pay raise, while simultaneously claiming she was failing; and

f. Escalating hostility and scrutiny each time Plaintiff exercised her right to complain of discrimination.

50. The environment was both objectively hostile (a reasonable employee in Plaintiff's position would find it abusive) and subjectively hostile (Plaintiff in fact experienced it as intimidating, stressful, and degrading).

51. This hostile work environment caused Plaintiff severe emotional distress, humiliation, and anxiety, and contributed directly to the pretextual termination of her employment.

52. Defendant's conduct was intentional, willful, and in reckless disregard of Plaintiff's federally and state-protected rights.

53. As a direct and proximate result, Plaintiff suffered lost income, lost benefits, loss of career opportunities, emotional pain and suffering, mental anguish, reputational harm, and other damages.

54. Plaintiff is entitled to recover all remedies available under Title VII and the TCHRA, including compensatory damages, punitive damages, back pay, front pay, injunctive relief, attorney's fees, and costs of suit.

## X. CAUSE OF ACTION: WRONGFUL AND CONSTRUCTIVE TERMINATION

(Against Defendant Centene Corporation)

55. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

56. Defendant Centene Corporation wrongfully terminated Plaintiff's employment on or about March 18, 2025, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 1981, and the Texas Commission on Human Rights Act (Texas Labor Code Chapter 21).

57. Defendant's stated reasons for termination—alleged performance deficiencies—were false, pretextual, and contradicted by the company's own actions, including:

a. Telling Plaintiff that her performance was satisfactory;

b. Awarding Plaintiff a pay raise during the very period in which she was on a Performance Improvement Plan (PIP);

c. Implementing Plaintiff's proposed process improvements across the department; and

d. Continuing to assign her significant contracting responsibilities until her termination.

58. No reasonable employer acting in good faith would issue a PIP, affirm an employee's performance as "good," grant a pay raise, and then terminate that same employee weeks later for alleged poor performance. These contradictions are powerful evidence of pretext.

59. Defendant's conduct created working conditions so intolerable that Plaintiff was effectively forced out, amounting to a constructive discharge.

60. Plaintiff's wrongful and constructive termination were motivated by her race, sex, and protected activity, in violation of federal and Texas law.

61. As a direct and proximate result, Plaintiff suffered loss of wages, loss of benefits, diminished earning capacity, emotional distress, humiliation, and damage to her professional reputation.

62. Plaintiff seeks all remedies available under law, including back pay, front pay, reinstatement (if feasible), compensatory damages, punitive damages, injunctive relief, attorney's fees, and costs of suit.

**XI. CAUSE OF ACTION: 42 U.S.C. § 1981 – RACE DISCRIMINATION IN EMPLOYMENT CONTRACTS**

13

(Against Defendant Centene Corporation)

63. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

64. Under 42 U.S.C. § 1981, all persons within the jurisdiction of the United States have the same right to make and enforce contracts as is enjoyed by white citizens. This protection extends to employment relationships, including hiring, promotion, discipline, pay, termination, and all benefits, privileges, terms, and conditions of the contractual relationship.

65. Plaintiff's employment with Defendant Centene Corporation constituted a contractual relationship within the meaning of § 1981.

66. Defendant intentionally discriminated against Plaintiff on the basis of her race with respect to the making, performance, and termination of her employment contract, including but not limited to:

a. Holding Plaintiff to stricter and shifting performance standards not applied to White comparators;

b. Rejecting Plaintiff's work for minor issues while approving similar work from White colleagues;

c. Imposing a retaliatory and discriminatory PIP on Plaintiff shortly after she raised concerns of disparate treatment;

d. Giving Plaintiff contradictory feedback and a pay raise while simultaneously claiming she was failing; and

e. Terminating Plaintiff on pretextual grounds while retaining similarly situated White employees who were not subjected to the same scrutiny or discipline.

67. Defendant's conduct was willful, malicious, and in reckless disregard of Plaintiff's federally protected rights.

14

68. As a direct and proximate result of Defendant's unlawful actions, Plaintiff suffered lost wages, lost benefits, loss of future earning capacity, emotional distress, mental anguish, humiliation, and reputational harm.

69. Plaintiff is entitled to recover all remedies available under § 1981, including compensatory damages, punitive damages, back pay, front pay, attorney's fees, costs of suit, and injunctive relief.

## XII. CAUSE OF ACTION: NEGLIGENT RETENTION AND SUPERVISION

### (Against Defendant Centene Corporation)

70. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

71. Under Texas common law, an employer has a duty to exercise reasonable care in hiring, retaining, and supervising employees to prevent foreseeable harm to others in the workplace.

72. Defendant Centene Corporation breached this duty by retaining and failing to properly supervise the managers and HR representatives who engaged in ongoing discrimination and retaliation against Plaintiff.

73. Defendant was on actual notice of this misconduct through Plaintiff's repeated reports to Human Resources, Employee Relations, and management, yet failed to intervene, discipline, or retrain the offending supervisors.

74. Instead of addressing the problem, Defendant allowed these individuals to escalate their hostility—culminating in a retaliatory PIP, contradictory praise and pay raise, and ultimately the wrongful termination of Plaintiff.

75. Defendant's failure to exercise reasonable care in supervising its managers and HR staff directly and proximately caused Plaintiff's injuries, including wrongful termination, lost wages and benefits, emotional distress, and reputational harm.

15

76. Plaintiff asserts this cause of action in the alternative to her statutory claims under Title VII, 42 U.S.C. § 1981, and the TCHRA.

77. Plaintiff is entitled to recover actual damages, costs of suit, and all other relief permitted under Texas common law.

### XIII. CAUSE OF ACTION: EQUAL PAY ACT VIOLATION

(Against Defendant Centene Corporation)

78. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

79. Defendant Centene Corporation is an employer within the meaning of the Equal Pay Act of 1963, 29 U.S.C. § 206(d).

80. Plaintiff and her White and/or male colleagues performed substantially equal work in their roles as Category Managers/Procurement Specialists, requiring similar skill, effort, and responsibility, and performed under similar conditions.

81. Despite performing substantially equal work, Plaintiff was compensated at a lower rate than her White and/or male comparators. These disparities were not explained by seniority, merit, quantity or quality of production, or any factor other than Plaintiff's race and sex.

82. Plaintiff repeatedly raised concerns about unequal treatment and the lack of transparent performance metrics used to evaluate her contributions. Instead of correcting disparities, Defendant retaliated against her with a PIP and eventual termination.

83. Defendant's actions constitute a violation of the Equal Pay Act.

84. As a direct and proximate result, Plaintiff suffered lost wages, diminished benefits, and loss of future earning capacity.

16

85. Plaintiff is entitled to recover all remedies available under the Equal Pay Act, including back pay, compensatory damages, liquidated damages, injunctive relief, attorney's fees, and costs of suit.

## XIV. CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Against Defendant Centene Corporation, Pled in the Alternative)

86. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

87. Defendant, by and through its managers, HR staff, and agents, engaged in extreme and outrageous conduct by subjecting Plaintiff to a pattern of discriminatory and retaliatory treatment, including:

a. Placing Plaintiff on a retaliatory PIP despite her satisfactory performance;

b. Simultaneously telling her that her performance was "good" and awarding her a pay raise, while secretly preparing to terminate her;

c. Imposing duplicative and unreasonable reporting requirements, even while she was on approved leave;

d. Micromanaging and nitpicking her work to create a false record of deficiencies; and

e. Abruptly terminating her employment under pretextual grounds, despite prior praise and reward.

88. Defendant's conduct was carried out intentionally and/or recklessly, with full knowledge that it would cause severe emotional distress to Plaintiff.

89. As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress, humiliation, anxiety, and mental anguish, beyond what a reasonable person should be expected to endure in the workplace.

90. Plaintiff asserts this cause of action in the alternative to her statutory claims under Title VII, § 1981, the TCHRA, and the Equal Pay Act.

17

91. Plaintiff is entitled to recover compensatory damages, exemplary damages, attorney's fees, and costs of suit for intentional infliction of emotional distress.

## XV. CAUSE OF ACTION: FRAUDULENT INDUCEMENT / MISREPRESENTATION

(Against Defendant Centene Corporation)

92. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

93. Defendant, through its managers and HR staff, made material misrepresentations to Plaintiff during her employment, including:

a. Representing that her performance was satisfactory;

b. Awarding her a pay raise during the same period she was on a PIP;

c. Assuring her that her job was secure so long as she complied with the PIP requirements; and

d. Indicating that her suggestions and process improvements were valued and being adopted.

94. These representations were false, misleading, and made with knowledge of their falsity or reckless disregard for the truth. Defendant made these statements to induce Plaintiff to continue working under oppressive conditions and to dissuade her from seeking other employment or legal remedies.

95. Plaintiff reasonably relied on these representations to her detriment. She remained in her position, worked excessive hours to comply with the PIP, and did not pursue alternative employment opportunities.

96. Defendant's misrepresentations proximately caused Plaintiff to suffer lost income, emotional distress, reputational harm, and constructive discharge.

18

97. Plaintiff is entitled to recover actual damages, consequential damages, exemplary damages, and all other relief available under Texas law for fraudulent inducement and misrepresentation.

## XVI. CAUSE OF ACTION: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
(Against Defendant Centene Corporation)

98. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

99. Under Texas law, employment at will is subject to the public policy exception recognized in *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985), which prohibits termination for refusing to commit an illegal act.

100. To the extent Defendant terminated Plaintiff for refusing to participate in unlawful practices, including the manipulation of performance metrics to create a pretextual basis for discipline and termination, Defendant violated the public policy of Texas.

101. Plaintiff further asserts that her termination contravenes the broader public policies embodied in Title VII, § 1981, the Equal Pay Act, the ADA, the FMLA, and the TCHRA, all of which protect employees from discrimination and retaliation for asserting their rights.

102. Defendant's actions constitute wrongful termination in violation of public policy, entitling Plaintiff to actual damages, punitive damages, and all other relief allowed by law.

## XVII. CAUSE OF ACTION: TEXAS WHISTLEBLOWER ACT

(Against Defendant Centene Corporation)

103. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

19

104.     The Texas Whistleblower Act (Texas Government Code § 554.001 et seq.) protects public employees from retaliation for reporting legal violations to appropriate law enforcement authorities.

105.     To the extent Centene Corporation was functioning as a government contractor or quasi-public employer and Plaintiff reported unlawful discriminatory practices to the EEOC, TWC-CRD, or other governmental authorities, Plaintiff asserts her rights under the Texas Whistleblower Act.

106.     Plaintiff's reports of discrimination and retaliation constituted the reporting of violations of state and federal employment laws to appropriate authorities.

107.     Defendant retaliated against Plaintiff by subjecting her to a retaliatory PIP, micromanagement, nitpicking, contradictory pay raise/termination, and eventual discharge.

108.     Plaintiff is entitled to all remedies available under the Texas Whistleblower Act, including reinstatement, back pay, compensatory damages, attorney's fees, costs of suit, and injunctive relief.

## XVIII. DAMAGES

109.     As a direct and proximate result of Defendant's unlawful acts and omissions, Plaintiff has sustained damages recoverable under federal law, Texas law, and common law, including but not limited to the following:

**A. Economic Damages**

a. Back pay for lost wages, salary increases, benefits, and other compensation she would have received absent the discrimination, retaliation, and wrongful termination;

b. Front pay for future lost earnings and diminished earning capacity caused by damage to her career trajectory and wrongful termination;

c. Lost retirement contributions, insurance benefits, and bonuses; and

20

d. Out-of-pocket costs and expenses incurred as a result of Defendant's conduct, including costs associated with seeking alternative employment.

**B. Non-Economic Damages**

e. Mental anguish, emotional distress, humiliation, and loss of dignity, resulting from the retaliatory PIP, contradictory praise/pay raise, and discriminatory termination;

f. Damage to her professional reputation and standing in her industry; and

g. Loss of enjoyment of life and career opportunities.

**C. Statutory Damages**

h. Remedies available under Title VII of the Civil Rights Act of 1964, including compensatory damages, punitive damages, back pay, front pay, injunctive relief, and attorney's fees;

i. Remedies under the Texas Commission on Human Rights Act (Chapter 21, Texas Labor Code), including compensatory and punitive damages, back pay, front pay, attorney's fees, and costs of suit;

j. Remedies under 42 U.S.C. § 1981, including compensatory damages, punitive damages, back pay, front pay, and attorney's fees;

k. Remedies under the Equal Pay Act, including back pay, compensatory damages, and liquidated damages equal to lost wages for willful violations;

l. Remedies under the Texas Whistleblower Act, including reinstatement, back pay, compensatory damages, attorney's fees, and injunctive relief; and

m. Remedies under federal and Texas anti-retaliation provisions, including equitable relief to prevent further retaliation.

**D. Tort Damages**

n. Actual damages under Texas common law for fraudulent inducement and negligent retention/supervision;

21

o. Consequential damages arising from Plaintiff's reliance on Defendant's false assurances of job security and performance satisfaction;

p. Exemplary (punitive) damages for Defendant's willful, malicious, and outrageous conduct, including intentional infliction of emotional distress; and

q. Attorney's fees, expert witness fees, and costs of suit incurred in pursuing these claims.

**E. Interest**

r. Pre-judgment and post-judgment interest as allowed by law.

### XIX. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff **Morgan Bryant** respectfully prays that Defendant Centene Corporation be cited to appear and answer herein, and that upon final hearing or trial, Plaintiff have judgment against Defendant for:

1. Back pay, including lost wages, benefits, and salary increases unlawfully denied;

2. Front pay or reinstatement, as appropriate, to make Plaintiff whole;

3. Compensatory damages for mental anguish, emotional distress, humiliation, loss of reputation, and diminished quality of life;

4. Consequential damages arising from Defendant's misrepresentations and retaliatory acts;

5. Statutory remedies under Title VII, the TCHRA, 42 U.S.C. § 1981, the Equal Pay Act, and the Texas Whistleblower Act, including equitable relief, injunctive orders, and liquidated damages where authorized;

6. Exemplary (punitive) damages for Defendant's willful, malicious, and reckless disregard of Plaintiff's rights;

7. Attorney's fees, expert witness fees, and costs of suit as authorized by federal and Texas law;

8. Pre-judgment and post-judgment interest as allowed by law; and

9. Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

22

## XX. JURY DEMAND

10. Plaintiff hereby respectfully demands a trial by jury and has tendered the appropriate jury

fee in accordance with Texas Rule of Civil Procedure 216.

Respectfully submitted,

/s/ John L. Pittman III
John L. Pittman III, Esq., LLM[2]
Texas State Bar No. 24127922
New York State Bar No. 5880646
California State Bar No. PL482988
District of Columbia Bar No. 1742578
**JOHN L. PITTMAN III | ATTORNEY AT LAW, APC**
925 B Street, Suite 604
San Diego, CA 92101
Direct: 760-575-4040 - Fax: 877-575-5264
jlpittmaniii@jp3law.com
*COUNSEL FOR PLAINTIFF MORGAN BRYANT*

23

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's Original Petition was served on all parties in accordance with Texas Rule of Civil Procedure 21a on this the ___ day of September, 2025, as follows:

**Defendant Centene Corporation**
c/o CT Corporation System
1999 Bryan Street, Suite 900
Dallas, Texas 75201-3136

**Service Method:** Certified Mail, Return Receipt Requested, and/or E-service through the Texas e-filing system

/s/ John L. Pittman III

**John L. Pittman III, Esq., LLM2**
Counsel for Plaintiff

24

US POSTAGE
FIRST-CLASS MAIL
$012.42

MARILYN BURGESS
HARRIS COUNTY DISTRICT CLERK
P.O. Box 4651
HOUSTON, TEXAS 77210-4651

7021 2720 0000 3485 8809

CENTENE CORPORATION
7711 CARONDELET AVE STE 800
SAINT LOUIS, MO 63105
2025-65103 333RD

Corporate Office

SEP 18 2025

7700 Forsyth Blvd.